Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOE J.W. ROBERTS JR.,<br><br>Plaintiff,<br><br>v.<br><br>VILMA KHOUNPHIXAY, DEPARTMENT OF CORRECTIONS, Jana Robison, Jack Warner, FNU Lynn, Heather Helms, Lindsay McIntyre, John Doe 1, John Doe 2,<br><br>Defendants. | No. 18-746 MJP<br><br>**AMENDED COMPLAINT**<br><br>**JURY DEMAND** |

## INTRODUCTION

Plaintiff Roberts was a prisoner at the Monroe Correctional Complex. It was known to the Defendants that Roberts suffered from mental health problems and had suffered from suicidal ideation before April 2018. In April 2018, over a period of about a week, Roberts threatened to self-harm and attempted to self-harm. Roberts also told Defendants that he was suicidal and attempted suicide. Despite having knowledge that Roberts would harm himself and that he was a suicide risk, defendants ignored the danger to Roberts. Instead of following their own rules and policies, they restrained Roberts in a chair as punishment rather than assessing

AMENDED COMPLAINT – Page 1

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

his mental state, notifying medical staff, or putting any suicide prevention measures in place. Defendants' actions caused physical harm, endangered Roberts, and inflicted unnecessary pain and suffering.

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

2. Venue is appropriate under 28 U.S.C. § 1391(b), because Defendants reside in this District and because all of the events and omissions giving rise to the claims occurred in this District. The Seattle Division is the proper forum because the events took place in Snohomish County, Washington.

3. Roberts exhausted his administrative remedies prior to filing his federal claim by alerting Superintendent Jack Warner that he was being punished instead of receiving appropriate medical treatment and by filing grievances about the incidents giving rise to this claim.

4. This Court has jurisdiction over the claims under the Americans with Disabilities Act and the Rehabilitation Act because both acts abrogate Eleventh Amendment immunity for such claims involving state prison systems.

**PARTIES**

5. Plaintiff Joe J.W. Roberts Jr. is a prisoner currently imprisoned at the Monroe Correctional Institute in Monroe Washington.

6. Defendant Vilma Khounphixay is a Department of Corrections Employee at the Monroe Correctional Complex.

AMENDED COMPLAINT – Page 2

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

7. Defendant Heather Helms is a Department of Corrections Employee at the Monroe Correctional Complex.

8. Defendant Jana Robison is a Department of Corrections Employee at the Monroe Correctional Complex.

9. Defendant FNU Lynn is a Department of Corrections Employee at the Monroe Correctional Complex.

10. Defendant John Doe 1 is a Department of Corrections Employee at the Monroe Correctional Complex.

11. Defendant John Doe 2 is a Department of Corrections Employee at the Monroe Correctional Complex.

12. Defendant Lindsay McIntyre is a Department of Corrections Employee at the Monroe Correctional Complex.

13. Defendant Jack Warner is a Department of Corrections Employee at the Monroe Correctional Complex.

14. Defendant Department of Corrections is an agency of the State of Washington.

15. All individual Defendants are sued in their individual and official capacity.

**FACTS**

16. All acts of defendants were taken under color of state law.

17. Before April 2018, defendants were aware Plaintiff Roberts suffered from mental illness and had previously attempted suicide.

18. Beginning on or about April 16, 2018, while a prisoner at Monroe Correctional Complex, Roberts became suicidal and engaged in self-harm.

AMENDED COMPLAINT – Page 3

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
206.451.7195

19. On or about April 16, 2018, Defendants understood Roberts was in a severe mental health situation and placed in Roberts in a safe cell where he could be observed, kept safe, and would not have the opportunity to self-harm and/or attempt suicide. Sometime between April 16 and April 20, Roberts told Khounphixay he was depressed and wanted to commit suicide.

20. On April 20, 2018, Khounphixay conducted a daily assessment of Robert's mental health.

21. On April 20, 2018, Roberts again told Khounphixay that he was very depressed and suicidal. Khounphixay said she "did not care."

22. Rather than address Robert's self-harming and suicidal ideation, Khounphixay instead insisted that Roberts should be transferred from the mental health area and the safe cell where he was and be placed in the Intensive Management Unit (IMU).

23. On April 20 and April 21, Roberts was depressed, felt psychotic, had suicidal thoughts and engaged in self-harm.

24. He yelled from about 10 until about 11:20 p.m. on April 20 about needing emergent help because he was suicidal.

25. He yelled so loud that a fellow inmate, Melford John Warren Jr., who was housed 8 or 9 cells down the tier, heard him.

26. Although the correctional officers were aware of his distress, they ignored Roberts.

27. When he received no help, he began thrashing against the walls of his cell. His head struck the walls of his cell hard enough to cause him to lose consciousness.

28. Two corrections officers, John Doe 1 and John Doe 2, saw Roberts hitting himself against the wall and offered no help. One of the officers, John Doe 1, taunted Roberts through the window of his cell and asked, "are you having fun?" Neither officer offered assistance nor prevented Roberts from continuing to harm himself.

AMENDED COMPLAINT – Page 4

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

29. As a result of his distress, which was known to the defendants, Roberts stood on his toilet and let himself "dead fall" head first on to the ground, intending to kill himself by snapping his neck on the ground.

30. Roberts lost consciousness as a result of the fall, and when he regained consciousness his face and mouth were numb. His toes tingled and his neck hurt so much he thought he was paralyzed. He could not move his neck because of the pain. He laid on the ground in this condition for hours. He was given no medical care.

31. On April 23, 2018, Khounphixay went to assess Roberts. Khounphixay accompanied officers to extract Roberts from his cell and move him to the IMU. Roberts told Khounphixay that he had attempted suicide several times over the weekend. Khounphixay responded that the suicide attempts "did not matter."

32. Also, on or about April 23, Roberts was extremely upset, suffered mental anguish, and smeared fecal matter in his cell. FNU Lynn visited him and Roberts told her he wanted to die. Lynn had Roberts placed in restraints rather than following protocols for suicidal inmates.

33. Roberts informed the officers and Superintendent Warner that he had attempted suicide.

34. Warner was responsible for arranging to have Roberts taken out of the safety cell without first assessing his mental state.

35. Although Roberts told Warner that he attempted suicide over the weekend, Warner ignored Roberts and failed to notify medical staff.

36. Roberts was then placed in a restraint chair as a form of punishment because he did not want to be removed from the mental health unit due to his suicidal thoughts and actions. Officers, including defendants Warner and Khounphixay, failed to notify medical staff of the suicide attempt or to provide safety checks or mental health treatment to Roberts.

AMENDED COMPLAINT – Page 5

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

37. Roberts was in the restraint chair for hours. This caused physical distress and mental anguish.

38. On April 24, 2018, Roberts was again assessed and was determined to be ready to return to the IMU.

39. At this point, on April 24, 2018, Roberts had been suicidal for about eight days. Despite this, Roberts was again placed in restraints rather than placed in a safe cell, where he could be continually observed and kept safe.

40. Roberts was placed in the restraint chair multiple times, six or seven times over the course of a week in April 2018.

41. During this time, when he was released from the restraint chair, he was placed in a cell with no camera, monitoring, suicide checks or other suicide prevention measures in place.

42. Defendants Warner, Helms, McIntyre, Robinson, Khounphixay, Doe 1, Doe 2, and Lynn all refused to believe that Roberts was suicidal.

43. Defendants Warner, Helms, McIntyre, Robinson, Khounphixay, Doe 1, Doe 2, and Lynn all insisted Roberts was engaged in "merely" self-harming behavior. Khounphixay went so far as say she "did not care" about the danger to Roberts.

44. When Roberts did self-harm, including attempting to kill himself, Defendants Warner, Helms, McIntyre, Robinson, Khounphixay, Doe1, Doe 2, and Lynn placed Roberts in the restraint chair. Khounphixay When he was released from the restraint chair, he was put back in the same cell which had no safety precautions or suicide prevention measures and where he would continue to hurt himself.

45. Defendants Warner, Helms, McIntyre, Robinson, Khounphixay, Doe 1, Doe 2, and Lynn knew of the cycle of self-harming/suicidal behavior in which Roberts engaged when he was released from the restraint hair and was returned to his cell. Knowing that he would harm himself and/or attempt suicide, and knowing that he had physically injured

AMENDED COMPLAINT – Page 6

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

himself, they deliberately chose to minimize the danger to Roberts and deliberately chose instead to place him in a cell where he could continue to harm himself and did harm himself in the course of a suicide attempt.

46. Roberts' behavior management plan mandated that if he was self-harming, he could be placed in restraints, but if he was suicidal, DOC policy recognizes that he must be placed where he could be continually observed, as in the safety cell.

47. Beginning on April 24, Roberts stopped eating and drank little water as a result of his depression.

48. On or around April 24, Roberts attempted suicide again by jumping off a table head first, knocking himself unconscious. As a result, he had bruises around his eye for over a week.

49. On or around April 24, Khounphixay came to Roberts' cell. Roberts asked why he was not placed in a safe cell and continually monitored. Roberts confirmed that Khounphixay knew of Roberts suicide attempts.

50. Roberts accused Khounphixay of using restraints as punishment. Khounphixay responded by calling Roberts a manipulator. She told Roberts that she would keep Roberts in Ad-Seg if he continued feeling suicidal. Although Khounphixay knew Roberts was suicidal and attempted suicide multiple times during this period, she took him from a safe place and placed him in a cell where he could not be continually observed and was able to engage in further self-harm and suicide attempts.

51. Being placed in restraints caused Roberts physical pain and mental suffering. The restraints were not used to restore discipline or to protect Roberts, but were used maliciously to cause Roberts harm and to retaliate against Roberts for requesting help with his severe mental health crisis.

52. After this conversation, Roberts banged his head until it ached and banged his hands until they were chaffed. He requested mental health services.

AMENDED COMPLAINT – Page 7

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

53. Jana Robinson responded to Roberts request for help. Roberts told her he was suicidal. On April 24, after Roberts had banged his hands until they were chaffed and swollen, and banged his head until it ached and a lump appeared, Roberts told Robinson that he did not feel safe in his cell and he did not know how to cope.

54. Robinson's response was to have Roberts placed in a restraint chair after he physically hurt himself or attempted suicide. She kept Roberts in a restraint chair for extended periods, although Roberts told her that it was painful and felt like torture. Robinson reported only that Roberts was self-harming, did not report his was suicidal, and failed to the take the precautions that are required with a suicidal inmate.

55. Sometime between April 23 and April 25, Lindsay McIntyre came to assess Roberts to see if he could be taken out of the restraint chair. Roberts told her he was very depressed and had been for some time. McIntyre responded that Roberts was being manipulative. She told Roberts that people who want to die just do it.

56. On or around April 26, Khounphixay threatened Roberts, telling Roberts she would keep him in Administrative Segregation if he continued to feel suicidal.

57. Between April 23 and May 7, Heather Helms also assessed Roberts and was told by Roberts he was suicidal. Although she was aware that Roberts had attempted suicide and engaged in self-harm, she failed to take action until Roberts had further injured himself or attempted suicide. This put Roberts at serious risk because it led to him being placed in a cell where he could harm himself.

58. When Roberts would tell defendants he was suicidal, Khounphixay, Lynn, Robinson and McIntyre would reply that Roberts only intended self-harm.

59. The failure to place Roberts under continual supervision put him in an unsafe situation. Defendants Warner, Helms, McIntyre, Robinson, Khounphixay, Doe 1, Doe 2, and Lynn knew of the danger to Roberts but deliberately chose to ignore it.

AMENDED COMPLAINT – Page 8

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

60.  Because he was not observed or monitored and because he was in a cell with no suicide prevention measures in place, he had the opportunity to attempt suicide by jumping off the table.

61.  Defendants refused to document Roberts' physical injuries.

62.  All remedies were exhausted.

## CAUSES OF ACTION

### COUNT 1: 42 U.S.C. § 1983

(Violation of the Eighth Amendment (by individual Defendants only)—failure to protect and failure to provide medical care)

63.  Roberts was suicidal and engaged in self-harm and tried to kill himself.

64.  Defendants Warner, Helms, McIntyre, Robinson, Khounphixay, Doe 1, Doe 2, and Lynn were aware the Roberts was suicidal. Roberts screamed and cried for help. He told defendants directly that he was suicidal and needed to be monitored. He made attempts to commit suicide and defendants were aware of these attempts.

65.  Defendant John Doe 1 saw Roberts intentionally fall off his toilet in an attempt to kill himself.

66.  Defendants Warner, Helms, McIntyre, Robinson, Khounphixay, Doe 1, Doe 2, and Lynn were deliberately indifferent to Roberts mental health needs and safety because they knew of a medical need and chose to ignore it.

67.  As a result of the defendant officers' actions, Roberts endured physical injuries, physical pain, and mental pain and suffering.

AMENDED COMPLAINT – Page 9

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

**COUNT 2: 42 U.S.C. § 1983**

(Violation of the Eighth Amendment (by individual Defendants only)—cruel and unusual punishment and excessive force in using restraints)

68. Defendant Khounphixay knew that Roberts was suicidal.

69. Roberts told Khounphixay that he was suicidal.

70. Although Khounphixay knew that Roberts was suicidal and self-harming she placed Roberts in solitary confinement.

71. Roberts was placed in restraints to punish him, and they did punish him by causing him physical pain and mental anguish.

72. Khounphixay could have placed Roberts in safe housing, but made a choice not to do so, denying him appropriate suicide prevention monitoring and treatment and instead punishing him by placing him repeatedly in a restraint chair.

**COUNT 3: AMERICANS WITH DISABILITIES ACT, TITLE II**
**42 U.S.C. § 12132**

(Discrimination against a person with a disability - denial of services because of the disability) (by the Department of Corrections)

73. Joe J.W. Roberts is an inmate with mental illness who was housed at Monroe Correctional Center in April 2018.

74. The Department of Corrections receives federal funding and is subject to the Americans with Disabilities Act.

75. In April 2018, Defendants were aware that Roberts was mentally ill and had a history of self-harm and suicide attempts.

76. The Department of Corrections and Monroe Correctional Center have policies in place to provide monitoring and other safety measures for mentally ill defendants

AMENDED COMPLAINT – Page 10

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

1  who pose a suicide risk as a result of their mental illness and to ensure mentally-ill defendants
2  are able to receive proper treatment without being punished.

3  77.  Defendants were aware or should have been aware of these policies and
4  procedures that are in place so that mentally ill prisoners are protected from harming
5  themselves or committing suicide while in the custody of the Department of Corrections, and
6  so that mentally-ill prisoners are able to request and receive adequate medical care and
7  treatment without fear of retaliation.

8  78.  Roberts made it known to Defendants between April 16 and April 23,
9  2018, that he had been hurting himself and had attempted suicide and that he was feeling
10 suicidal.  During this period notified Defendants of the risk that he posed to himself because of
11 his mental illness and he requested medical attention, safety checks and other care for his
12 mental illness, such requests constituting a reasonable accommodation.

13 79.  Instead of giving Roberts access to the protections and services in place to
14 care for mentally ill prisoners, Defendants deprived him of these services and did so because of
15 behaviors related to his mental illness, including punishing him by placing him in a restraint
16 chair. The Department of Corrections, through its leadership and lack of supervision and
17 training, demonstrated deliberate indifference to Roberts' disability and associated symptoms.
18 This deliberate indifference was further manifested in the Department of Corrections allowing
19 its employees to punish Roberts for his disability.

20 80.  Once Roberts was released from the restraint chair he was denied access to
21 a cell with precautions in place to protect him from a suicide attempt and instead sent to a cell
22 without cameras or monitoring and was denied other services and treatment for his mental
23 illness.

24 81.  As a result of this deliberate indifference and denial of services available
25 to prisoners with mental illness, Roberts was able to make a second suicide attempt on April
26

AMENDED COMPLAINT – Page 11

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
206.451.7195

24, 2018, and this caused physical pain and injury, endangered Roberts and caused unnecessary pain and suffering.

**COUNT 4: REHABILITATION ACT, SECTION 504**
**29 U.S.C. § 794**

(Discrimination against a person with a disability - denial of services because of the disability) (Against Department of Corrections)

82. Joe J.W. Roberts is an inmate with mental illness who was housed at Monroe Correctional Center in April 2018.

83. The Department of Corrections receives funds from the federal government and is subject to the Rehabilitation Act.

84. In April 2018, Defendants were aware that Roberts was mentally ill and had a history of self-harm and suicide attempts.

85. The Department of Corrections and Monroe Correctional Center have policies in place to provide monitoring and other safety measures for mentally ill defendants who pose a suicide risk as a result of their mental illness and to ensure mentally-ill defendants are able to receive proper treatment without being punished.

86. Defendants were aware or should have been aware of these policies and procedures that are in place so that mentally ill prisoners are protected from harming themselves or committing suicide while in the custody of the Department of Corrections, and so that mentally-ill prisoners are able to request and receive adequate medical care and treatment without fear of retaliation.

87. Roberts made it known to Defendants between April 16 and April 23, 2018 that he had been hurting himself and had attempted suicide and that he was feeling suicidal. During this time, he notified Defendants of the risk that he posed to himself because of his mental illness and he requested medical attention, safety checks and other care for his mental illness, such requests constituting a reasonable accommodation.

AMENDED COMPLAINT – Page 12

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

88. Instead of giving Roberts access to the protections and services in place to care for mentally ill prisoners, Defendants deprived him of these services and did so because of behaviors related to his mental illness, instead punishing him by placing him in a restraint chair. The Department of Corrections, through its leadership and lack of supervision and training, demonstrated deliberate indifference to Roberts' disability and associated symptoms. This deliberate indifference was further manifested in the Department of Corrections allowing its employees to punish Roberts for his disability.

89. Once Roberts was released from the restraint chair, he was denied access to a cell with precautions in place to protect him from a suicide attempt. Instead, he was sent to a cell without cameras or monitoring and was denied other services and treatment for his mental illness.

90. As a result of this deliberate indifference and denial of services available to prisoners with mental illness, Roberts was able to make a second suicide attempt on April 24, 2018, and this caused physical pain and injury, endangered Roberts and caused unnecessary pain and suffering.

**REQUEST FOR RELIEF**

Plaintiff seeks judgment against Defendants as follows:

A. Damages in an amount to be determined by jury;

B. Punitive damages in an amount to be determined by a jury;

C. Costs of suit, including reasonable attorneys' fees, costs, and expenses as provided by law; and

D. Such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

AMENDED COMPLAINT – Page 13

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
206.451.7195

1  DATED July 1, 2019.

2                                         LAW OFFICE OF HARRY WILLIAMS LLC

3                                         By  s/ Harry Williams IV

                                            Harry Williams IV, WSBA #41020

4                                         harry@harrywilliamslaw.com.

                                            707 East Harrison

5                                         Seattle, WA 98102, 206.451.7195

6                                         By:  s/  Jennifer Horwitz WSBA #23695

7                                         Law Office of Jennifer Horwitz

                                         P.O. Box 70859

8                                         Seattle, WA  98127

                                       Phone:  (206) 799-2797

9                                         Email:  jennifer@jenniferhorwitzlaw.com

10

11

12                                         ***Attorneys for Plaintiff***

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMENDED COMPLAINT – Page 14